UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NATE A. LINDELL,
also known as Nathaniel Allen Lindell,

        Plaintiff,

        v.                                Case No. 13-C-0759

WILLIAM POLLARD, CO II DAVID LEVEY,
BRIAN GREFF, LT. JESSIE SCHNEIDER,
MS. TOMASEK-HARPER, TONIA MOON,
CHARLES FACKTOR, and CINDY O'DONNELL,

        Defendants.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. 41),
DENYING PLAINTIFF'S MOTION FOR SANCTIONS (DOC. 77), DENYING PLAINTIFF'S
MOTION FOR SANCTIONS (DOC. 78), AND DENYING PLAINTIFF'S MOTION TO
STRIKE (DOC. 79)

      The pro se plaintiff, Nate A. Lindell (Lindell), is a former Wisconsin state prisoner.  He

filed this action under 42 U.S.C. § 1983 and the court granted his motion for leave to proceed

*in forma pauperis* on a First Amendment free speech claim based on allegations that

defendants deprived him of his art, books, and photos at Waupun Correctional Institution

(WCI).  Defendants have filed a motion for summary judgment.  For the reasons explained

herein, the court will grant defendants' summary judgment motion and dismiss this case.

I. STANDARD OF REVIEW

      "The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629

F.3d 665, 668 (7th Cir. 2011).  "Material facts" are those under the applicable substantive law

that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(4).

## II. FACTS[1]

Lindell claims that defendants deprived him of his art, books, and photographs without penological justification in violation of his First Amendment right to free speech. The defendants are: WCI Warden William Pollard; Correctional Officer David Levey; Recreation Leader Gloria Tomasek-Harper; Corrections Program Supervisor Brian Greff; Lieutenant Jessie Schneider; Institution Complaint Examiner (ICE) Tonia Moon; Corrections Complaint Examiner (CCE) Charles Facktor; and Policy Initiatives Advisor Cindy O'Donnell.

Lindell transferred to WCI from Wisconsin Secure Program Facility (WSPF) on January 4, 2013, on a temporary hold. His supervision status changed on January 22, 2013, to WCI.

---

[1] Relevant facts are taken from the Defendants' Proposed Findings of Fact, Plaintiff's Response to Defendants' Proposed Findings of Fact, and Defendants' Reply to Plaintiff's Response. Relevant facts are also taken from Plaintiff's Proposed Findings of Fact.

When Lindell's property arrived at WCI from WSPF, Correctional Officer VanBuren signed the property receipt form indicating that he processed the property.[2] (Levey Aff. ¶ 14, Ex. 1019 at 1.) After Lindell's property was inventoried and documented, his allowable property was given to him on January 24, 2013, along with information regarding what items had been deemed contraband.

When an inmate has property deemed contraband for being over the allowable limit or for other reasons, the property is separated and documented. The inmate is notified by providing him a list of items deemed contraband. The inmate can then decide to dispose of the contraband, send the contraband out at his expense, or have the contraband held while he files an inmate complaint.

On January 24, 2013, Levey went to Lindell's cell to give him his allowed property and to advise him of the property that had been deemed contraband, and why. Levey informed Lindell that one scientific calculator, nine photographs, 85 publications, and one bag of legal property had been deemed contraband.[3] Levey advised Lindell that his options were to file an inmate complaint about the contraband determination, to have the contraband destroyed, or to have it mailed out at his expense. Lindell requested the opportunity to sort through the property to determine what was kept and what was disposed of. Levey informed him, pursuant to policy, that staff used their discretion to bring the property to allowable limits and that Lindell would not be permitted to sort through his property. Levey provided Lindell a copy

---

[2] The parties dispute whether Lindell's property arrived with him at WCI on January 4, 2013, or whether the property was sent after his January 22, 2013, supervision status changed. According to defendants, Lindell's January 22, 2013, supervision change prompted his property being sent to WCI. Lindell, on the other hand, avers that his property arrived with him at WCI on January 4, 2013. This dispute is not material to the court's decision on summary judgment.

[3] Lindell is not proceeding on any claims relating to his legal property.

3

of a DOC-237A Property Receipt/Disposition form with this information noted. (Levey Aff. ¶ 18, Ex. 1019.)

When an inmate is in segregation at WCI, all of his property is secured and stored in the property room until it is inventoried and determined that the property is within allowable limits. To preserve the management, resources, and security of the institution, it is necessary to put general limitations on inmate property. Pursuant to Division of Adult Institutions (DAI) Policy #309.20.03(I)(B)(5), "[a]ll personal property (excluding medically prescribed items, hobby materials, legal materials, electronic equipment, typewriters, fans or other large items) will be required to fit into a box measuring 32" x 16" x 16" or 8,192 cubic inches. Canteen items are considered personal property and count towards the cubic inch limit." (Levey Aff. ¶ 6, Ex. 1018 at Bates 003.) Pursuant to DAI Policy #309.20.03(I)(B)(1), "[a]llowable personal property may vary between institutions/centers depending on the security and treatment programs at the facility." (Levey Aff. ¶ 7, Ex. 1018 at Bates 003.) WCI inmates are allowed five shopping bags, 13" x 7" x 17", or 1,547 cubic inches each, for a total of 7,735 cubic inches. (Levey Aff. ¶ 8.)[4] WCI inmates in segregation are allowed three shopping bags—two for legal materials and one for miscellaneous paperwork; if an inmate wants to allocate all three shopping bags to legal materials, that is allowed.

Pursuant to DAI Facility Implementation Procedures WCI #309.20.03(I)(D), "[i]t is the inmate's responsibility to remain within the property limits set forth at all times." (Levey Aff., ¶ 10, Ex. 1018 at Bates 022.) DAI Facility Implementation Procedures WCI #309.20.03(I)(F) states that "[w]hen an inventory is conducted and it is determined that the individual item limit

_____

[4] According to Lindell, each shopping bag can hold no more than 12' x 8.5" x 14", or 1,428 cubic inches, and five such bags comes to a total of 7,140 cubic inches. (Complaint ¶ 21.)

4

or the total allowable volume limit has been exceeded, staff will bring the property into compliance. Items that are seized as contraband will be done so at the discretion of staff, with that decision being final."[5] (Levey Aff. ¶ 11, Ex. 1018 at Bates 022.)

During the inventory of Lindell's property by property staff on January 24, 2013, some items were determined to be "hobby items." That property was sent to the hobby department so staff could inventory it and determine if there was any contraband. Tomasek-Harper inventoried Lindell's hobby items and determined that the following items were contraband: completed drawings, photocopies of completed art work, blue paper (not construction paper or poster board), and a broken knitting needle.

Pursuant to DAI Facility Implementation Procedures WCI Policy #309.36.01(I)(G)(1) and (3), "[h]obby staff maintains the authority to designate projects as completed" and "all completed hobby projects must be disposed of within 30 days of completion through the Hobby Department only."[6] (Tomasek-Harper Aff. ¶ 7, Ex. 1017 at Bates 012.) It is an

_____

[5]According to the defendants, there is a legitimate penological reason why Lindell was not given the opportunity to pick and choose which publications/materials he wanted to retain, and DAI Policy #309.20.03(I)(F)'s requirement that staff bring an inmate's property into compliance during an inventory. This provides inmates an incentive to bring themselves into compliance on a continuing basis, as it is an inmate's responsibility to maintain his property within allowable limits. At the time an inmate's property is inventoried, it is already divided between what is allowed in his cell, what was allowed in stored property, and what was determined over-the-limit (contraband). Staff would have to gather everything together, deliver it to the segregation unit, store it until they could be reviewed, bring it to the review, and then return it to property after the review. The policy does not require staff to list all the publications that were in excess and disposed of because inmates may exceed authorized limits by dozens of these types of items, and the notion that specific descriptions should be provided equates to an exorbitant amount of staff time and resources to create such descriptions. (DPFF ¶ 103.) It would also create issues with inmates challenging the accuracy or extent of the description itself. (*Id.*)

[6] According to the defendants, there is a legitimate penological reason for DAI Policy #309.36.01(I)(G)(3)'s requirement that "[a]ll completed hobby projects must be disposed of within 30 days of completion through the Hobby Department only", and DAI Policy #309.36.01(I)(G)(9)'s requirement that "[h]obby projects/materials sent out of the institution may not be returned for any reason, including photocopies or reproductions of completed artwork." This is to avoid excessive personal property in an inmate's cell. (Core Decl., 3-16-15, ¶ 7.) The amount of property, paper specifically, is limited in cells because the more paper an inmate has, the easier it is for him to conceal paper-like contraband such as gang literature, personal information about staff, escape plans, and/or plans of other types of disturbances. (Core Decl., 3-16-15, ¶ 8.)

inmate's responsibility to know what property he has and how to dispose of completed art projects in order to stay within the allowable limits. Determining if a project is complete is a judgment call. Working in the hobby department has provided Tomasek-Harper the experience to tell when a project appears to be complete. If something looks like it is not missing a portion, it is determined to be complete. (Tomasek-Harper Aff. ¶ 8.)[7]

Lindell wrote to Pollard on multiple occasions regarding issues with his property. Pollard responded to some inquiries and others he forwarded to appropriate staff more directly involved with the matter who could provide a more thorough response. Lindell also filed several inmate complaints regarding issues with his property.

---

While an inmate can certainly use other types of property to hide contraband and fashion weapons, paper is definitely more in excess and is less obvious to staff to detect an absence of. (Core Decl., 3-16-15, ¶ 9.) Excess paper can also be used to cover an inmate's cell window, which makes it impossible for security staff to monitor an inmate's activities and ensure his well-being. (Core Decl., 3-16-15, ¶ 10.) If an inmate were permitted to possess completed hobby items or photocopies of the same, that collection could grow to an unlimited number and become a fire hazard. (Core Decl., 3-16-15, ¶ 11.) The more paper an inmate has in his cell, the more problematic and time consuming cell searches become. The need to regularly search an inmate's cell is fundamental in a prison setting, and staff must efficiently and effectively perform these searches with limited time and resources. (Core Decl., 3-16-15, ¶ 12.) If an inmate were allowed to accumulate drawings and voluminous papers, it would make searches more difficult. The more paper an inmate has in his possession, the more difficult and time consuming it is for staff to conduct searches to ensure that no contraband is hidden. The longer it takes to conduct these cell searches, the longer staff are taken away from other security functions. (Core Decl., 3-16-15, ¶ 13.) Hobby projects often express an inmate's thoughts, feelings, and/or beliefs. Retaining some projects could potentially create conflict between inmates if they have different opinions and/or beliefs. (Core Decl., 3-16-15, ¶ 14.) Hobby projects must also be monitored and controlled due to the security threats related to inmates marketing and selling their hobby projects, such as manufactured greeting cards, using drawings as patterns for tattoos, etc., as a form of currency in exchange for stamps, canteen items, and possibly contraband, such as homemade weapons. (Core Decl., 3-16-15, ¶ 15.) This type of impermissible marketing can happen just as easily with a photocopy of the artwork – especially for marketing tattoos – as it can with the original artwork. (*See id.*)

    [7] Lindell disagrees with the policy which provides that institution staff maintains the authority to designate projects as completed. He alleges that only he can know when a piece of his art/drawing is finished. (Lindell Aff. ¶6.) Defendants do not dispute that only Lindell can actually determine when his own artwork is finished, but assert that there is a legitimate penological interest behind the DAI Policy #309.36.01(I)(G)(1) and (3) requiring hobby staff to use their discretion in determining when a project is complete. The policy exists to control the amount of property that an inmate may retain in his possession – including hobby items. If hobby staff were not required to determine when a project was complete, any inmate could circumvent the rule by infinitely claiming a project was not complete by simply stating there is more work to be added. Therefore, a reasonable, common sense view of the seized items must indicate completion.

6

On January 25, 2013, Lindell submitted an Interview/Information Request addressed to former Warden Michael Thurmer, and Pollard forwarded this request to staff for response. Schneider responded, noting that it was Lindell's responsibility to maintain his property within the allowable limits, and that he would be allowed to exchange his property pursuant to the previous memo Schneider provided to Lindell.

Lindell filed offender complaint WCI-2013-2126 on January 30, 2013, alleging that on January 24, 2013, Levey came to his cell and advised him he had excess property and had to dispose of it. Lindell alleged he agreed but said that he needed to select the property to be disposed. He claimed Levey told him he would have no say in the decision. ICE Moon investigated complaint WCI-2013-2126 and noted as follows:

> Documentation shows that inmate Lindell has been informed by Lt. Schneider that only his legal work that was deemed contraband will be exchanged and how he is to exchange it. Warden Pollard at no time informed anyone that inmate Lindell would be able to exchange whatever property he wanted that was deemed contraband.

> As for other items such as photos and books, inmates must realize that their property may be subject to an inventory at any time. When an inventory is conducted and it is determined that the individual item limit posted in the WCI Handbook or DAI P&P 309.20.03, or the total allowable volume limit as stated in DOC 309 or DAI P&P 309.20.03 has been exceeded, staff will bring the property into compliance with the above limits.

> The identification of contraband items listed on the Contraband Notice given to inmate Lindell results from staff monitoring and controlling the property through inventory, following DOC 309.20(2). At that time, items that are seized as contraband will be done so at the discretion of staff, with that decision being final. There is no administrative obligation to allow inmates to exchange items deemed contraband with similar otherwise allowed items.

> Inmate Lindell must dispose of the contraband that is not legal work, by notifying Sgt. Dahlke in the Property Department immediately of how he wishes to facilitate that action. Sgt. Waller and COII Levey will be informed of this decision also.

Case 2:13-cv-00759-CNC   Filed 08/31/15   Page 7 of 23   Document 86

Moon recommended that WCI-2013-2126 be dismissed. (Moon Aff. ¶ 16; Factktor Aff. ¶ 11, Ex. 1001 at Bates 002-003; O'Donnell Aff. ¶ 11.) On February 6, 2013, Deputy Warden Strahota accepted Moon's recommendation and dismissed WCI-2013-2126.

Lindell filed an appeal to the CCE's office. Facktor reviewed complaint WCI-2013-2126, Moon's findings and recommendation, and the appeal. Facktor concluded that the appeal was well documented and that Moon's decision reasonably and appropriately addressed the issue Lindell raised. Lindell did not present any information to warrant a recommendation overturning the decision. Facktor recommended that the appeal be dismissed and on February 20, 2013, O'Donnell accepted the recommendation to dismiss complaint WCI-2013-2126.

Lindell submitted an Interview/Information Request to Pollard, dated February 3, 2013, wherein he contended that Levey sent drawings and photocopies of drawings to the hobby department, and that the hobby department declared them contraband and told him he must dispose of them. Lindell requested that Pollard restrain staff from harassing him. Pollard forwarded the request to staff for response and Schneider did so on February 6, 2013, explaining the procedure when property staff come across hobby items.

Lindell wrote to Pollard on February 5, 2013, describing a conversation he had with Greff, and other issues regarding the segregation building. Pollard forwarded this correspondence to staff for response, and Greff responded on February 6, 2013. With regard to Lindell's issue with his hobby items, Greff explained that "[p]er policy, completed hobby items must be sent out and 'hobby staff maintain the authority to designate projects as completed.' Simply because you do not agree with the outcome doesn't mean staff have violated any procedures." (Pollard Aff. ¶ 28, Ex. 1012 at Bates 001; Greff Aff. ¶ 7.) Lindell

8

contends that on February 5, 2013, Greff "angrily barked" at him after he asked when he would be allowed to sort through his property, that Greff criticized him for filing complaints through the Inmate Complaint Review System, and that Greff, "in an aggravated belligerent voice," stated "I see why staff at Boscobel had a problem with you." (*See* Complaint ¶ 41; Greff Aff. ¶ 13.)

Lindell filed offender complaint WCI-2013-2599 on February 6, 2013, alleging that on January 29, 2013, he received a contraband notice from the hobby department which stated that his "1) 'completed drawings,' 2) 'photocopies of completed artwork,' 3) 'blue paper,' 4) '19 sheets of construction paper' were contraband, while the last items were held in property." (Pollard Aff. ¶ 11 Tomasek-Harper Aff. ¶ 9; Moon Aff. ¶ 22; Facktor Aff. ¶ 17, Ex. 1002 at Bates 011; O'Donnell Aff. ¶ 17.) He further contended that he was told he had to dispose of the first three items and was being temporarily denied the last. Lindell also claimed several of the items were necessary for legal documents but they had not been given to him, and that the hobby department continued to deem the drawings contraband.

Moon investigated complaint WCI-2013-2599 and noted as follows:

ICE looked in inmate Lindell's property and the blue paper has been put into his property.

As for the completed drawings, Ms. Tomasek-Harper of the Hobby Department stated they are completed and so they need to be sent out. I note any inmate could infinitely claim a project was not complete by simply stating there is more work to be added. A reasonable, common sense view of the seized items indicates completion.

The photocopies of his old completed artwork is not allowed. Per DAI P&P 309.36.01 'All completed hobby projects must be disposed of within 30 days of completion through the Hobby Department only'. Inmates may not circumvent this policy by having photocopies of their completed artwork sent into them. Inmates may not possess their own completed artwork. Inmate Lindell claims

he is allowed photocopies per a law suit he had.  Nowhere in the law suit does it state that inmate Lindell may possess photocopies of his own artwork.

Inmate Lindell must dispose of the completed items and the photocopies of his artwork by contacting Ms. Tomasek-Harper immediately in the hobby department and inform her of how he wants the items disposed of.

Moon recommended that complaint WCI-2013-2599 be dismissed.  (Pollard Aff. ¶ 12; Tomasek-Harper Aff. ¶ 10; Moon Aff. ¶ 23; Facktor Aff. ¶ 18, Ex. 1002 at Bates 002-003; O'Donnell Aff., ¶ 18.)  Specifically, Moon found that the blue paper was necessary for legal documents and so it was moved into Lindell's property.  Moon instructed Lindell to contact Tomasek-Harper immediately to tell her how he wanted the remaining items disposed.  On March 14, 2013, Pollard accepted Moon's recommendation, and dismissed complaint WCI-2013-2599.

Lindell filed an appeal to the CCE's office.  Facktor reviewed complaint WCI-2013-2599, Moon's findings and recommendation, and the appeal.  In addition, Facktor reviewed the lawsuit provided by Lindell, but found it irrelevant to the situation.  Facktor concluded that Moon's decision reasonably and appropriately addressed the issue, and that Lindell did not present any information to warrant a recommendation overturning the decision.  He recommended that the appeal be dismissed and on April 15, 2013, O'Donnell accepted Facktor's recommendation and dismissed complaint WCI-2013-2599.

In early February 2013, Lindell requested that the hobby items be sent to his attorney, but Tomasek-Harper denied the request because his attorney was not on his approved visiting list.  Pursuant to DAI Policy #309.36.01(I)(G)(6)(b), hobby items must be sent to an individual on the inmate's approved visiting list.

10

Lindell filed complaint WCI-2013-7336 on April 16, 2013, alleging that on April 2, 2013, he was told his "over the limit contraband" publications were destroyed, he was not told exactly which ones, how they were destroyed, or when. Moon investigated complaint WCI-2013-7336 and on May 1, 2013, noted:

> Inmate Lindell's complaint about the contraband publications, WCI-2013-2126, was dismissed on 2/6/13 and he was told to contact Sgt Dahlke to dispose of the items. Property waited 30 days and with no direction from the inmate, they [sic] contraband was destroyed.
>
> DOC 310.03(13), Wis. Adm. Code, defines 'Moot' as 'the issue or complaint is one which seeks to determine an abstract question which does not arise upon existing facts or rights, or where there would be no practical effect to any remedy because the issue or complaint is already resolved.' The issue of the complaint is determined to be moot by definition in DOC 310.03(13). Consequently, the complaint is rejected pursuant to DOC 310.11(5)(f).

(Pollard Aff. ¶ 19; Moon Aff. ¶ 35, Ex. 1006 at Bates 002.) Lindell filed a Request for Review of Rejected Complaint. On May 7, 2013, Pollard found that the complaint was appropriately rejected because the decision was in accordance to DOC policies and procedures, and the Wisconsin Administrative Code. Lindell filed an appeal to the CCE's office, which was received on April 23, 2013. This document was returned to Lindell with a cover letter from Karen Gourlie of the CCE's Office, dated April 23, 2013, because the appeal was premature pursuant to Wis. Admin. Code. § DOC 310.12(3).

The Property Receipt/Disposition form indicates that Lindell's nine photos were mailed on February 12, 2013. Sergeant Dahlke mailed the photos on February 12, 2013, in the self-addressed stamped envelope provided by Lindell. As indicated on the Property Receipt/Disposition form, the property listed on the form with the exception of the photos was destroyed on March 7, 2013. Sergeant Dahlke destroyed the property by placing it in the trash. On March 25, 2013, Tomasek-Harper disposed of Lindell's completed hobby items

11

because he failed to provide her with a name and address from his approved visiting list to whom the items should be sent to.

Lindell filed complaint WCI-2013-9421 on May 14, 2013, charging that Levey refused to tell him the names of his publications that were destroyed. On May 23, 2013, Moon investigated complaint WCI-2013-9421 and wrote:

> When an inmate is found to be over the limit of any individual property item and those excess items are seized, the inmate loses control of that seized property. The items are identified on the Contraband Notice by the type of property, i.e., photos, publications, letters, razors, folders. There is no requirement to provide a specific description of each item within any given type in excess. In fact, whereas inmates may exceed authorized limits by dozens of these types of items, the notion that specific descriptions should be provided equates to an absorbitant [sic] amount of staff time and resources to create such descriptions, notwithstanding issues regarding the accuracy or extent of the description itself.

> The simple fact here is that inmate Lindell exceeded his limit of allowable publications and they were disposed of. His ability to control his property, what titles he has, was forfeited when he exceeded the reasonable limit prescribed by DAI P&P 309.20.03. No recommendation will be made that requires staff to sort, list, or describe individual items within any type of seized material. Recommendation is for dismissal.

(Moon Aff. ¶ 41; Facktor Aff. ¶ 25, Ex. 1003 at Bates 002; O'Donnell Aff. ¶ 25). On May 24, 2013, Strahota accepted Moon's recommendation and dismissed WCI-2013-9421.

Lindell filed an appeal to the CCE's office. Facktor determined that Lindell's appeal of Strahota's decision was received by the CCE's office beyond the ten-day deadline established by Wis. Admin. Code. § DOC 310.13(1). Accordingly, Facktor recommended that the appeal be dismissed as untimely. On July 5, 2013, O'Donnell accepted Facktor's recommendation and dismissed the complaint.

III. DISCUSSION

Defendants contend that they are entitled to summary judgment because the undisputed facts establish that they had a legitimate penological interest in limiting the amount of property Lindell kept in his cell. Defendants also contend that Greff, Facktor, O'Donnell, and Schneider are not liable under 42 U.S.C. § 1983 because they had no personal involvement in the disposal of Lindell's property. Lastly, defendants contend that since it was not clearly established, based on the facts confronting them, that their conduct would violate Lindell's First Amendment rights, they are entitled to qualified immunity.

In response, Lindell contends that he is entitled judgment because the undisputed facts establish that defendants lacked a legitimate penological reason for depriving him of his artwork, for prohibiting him from choosing what publications he would keep, and for destroying his art and publications. He also contends that defendants Greff and Schneider were personally involved in the deprivation of his art and publications.[8] Lindell further asserts that qualified immunity is not justifiable.

"[I]mprisonment does not automatically deprive a prisoner of certain important constitutional protections, includes those of the First Amendment." *Beard v. Banks*, 548 U.S. 521, 528 (2006) (citing *Turner v. Safley*, 482 U.S. 78, 93 (1987)). At the same time, the Constitution sometimes permits greater restriction of such rights in a prison setting. *Id.* (citing *Turner*, 482 U.S. at 84-85). Courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the

---

[8]Lindell does not oppose the dismissal of Facktor and O'Donnell for lack of personal involvement.

Case 2:13-cv-00759-CNC   Filed 08/31/15   Page 13 of 23   Document 86

legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

In *Turner*, the Supreme Court "reconciled these principles" holding that a prison regulation that restricts an inmate's constitutional rights is valid if it is reasonably related to legitimate penological interests. *Turner*, 482 U.S. at 89. *Turner* enumerated four factors relevant in assessing the reasonableness of restrictive prison regulations: (1) whether there is a valid, rational connection between the regulation and the legitimate government interest set forward to justify it; (2) whether alternative means to exercise the right exists; (3) the impact that accommodating the right will have on prison resources; and (4) the absence of alternatives to the prison regulation. *Id.* at 89-90.

Inmates who challenge the reasonableness of a prison regulation bear the burden of proving its invalidity. *Singer v. Raemisch*, 593 F.3d 529, 534 (7th Cir. 2010) (citing *Overton*, 539 U.S. at 132). Inferences as to disputed matters of professional judgment are governed by *Overton*, which mandates deference to the views of prison authorities. *Beard*, 548 U.S. at 530 (citing *Overton*, 539 U.S. at 132). "Unless [Lindell] can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Id.*

This case involves Lindell's publications and artwork/hobby items that were transferred to WCI from WSPF. Once at WCI, Lindell received notice that his property contained contraband. As is relevant to this case, the contraband consisted of 85 publications (WCI regulations allow for 25 publications) and completed hobby items (WCI requires that

completed hobby projects be disposed of within 30 days of completion).[9]  With regard to the publications, Lindell had the option of filing a complaint about the contraband determination on his 85 publications, having them destroyed, or having them mailed at his expense.  Levey denied Lindell's request to sort through the publications to determine what to keep and what to dispose of.  On March 7, 2013, Sergeant Dahlke destroyed Lindell's 85 publications.  With regard to the hobby projects, on March 25, 2013, Tomasek-Harper disposed of Lindell's completed hobby items because he failed to provide her with a name and address of a person on his approved visitor list to whom the items should be mailed.

Defendants contend that the regulations at issue satisfy the *Turner* factors.  According to defendants, the regulations at issue were applied to ensure the safety and well being of Lindell, other inmates, prison staff, and prison security.  They submit that the regulations satisfy the second *Turner* factor in that there is an alternative means for inmates to exercise their free speech rights, namely, by complying with the regulations which enable them to have a reasonable amount of property in their cells.  Turning to the third factor, the defendants maintain that accommodating the right to have more property than permitted under the regulations and to choose what property to keep when exceeding the limit would adversely affect the operation of the prison by requiring additional staff time and resources.  Fourth, defendants argue that Lindell cannot point to a ready alternative to satisfy the prison's legitimate interest that "fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests. . . ."  *Turner*, 482 U.S. at 91.

---

[9] Lindell was also notified that nine photos were contraband but Lindell sent the nine photos out of the institution on February 12, 2013.

15

Lindell does not challenge the general regulation that sets limits on the amount of property an inmate may possess.  He does not dispute that it is necessary to put general limitations on inmate property to preserve the management, resources, and security of WCI. Institutional security is a "legitimate penal objective[.]"  *See Pell v. Procunier*, 417 U.S. 817, 823 (1974) ("central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves"); *see also Westefer v. Snyder*, 422 F.3d 570, 575 (7th Cir. 2005).

Lindell does challenge the refusal to permit him to decide which publications were contraband and the subsequent destructions of the 85 contraband publications.  He also challenges the WCI policy that does not permit completed hobby items, the policy under which WCI staff decides when artwork is complete, and the destruction of his completed artwork.

A.    Publications

With regard to Lindell's publications, defendants' *Turner* analysis does not account for the fact that Lindell had just transferred to WCI.  It is undisputed that Levey denied Lindell's request to sort through his publications to decide which he would keep.  Levey cited DAI Policy 309.20.03(I)(F) which requires staff to bring an inmate's property into compliance during an inventory.  Defendants' justification for that policy is that it provides an incentive for inmates to always keep their property in compliance with allowable limits.  However, there is no indication that Lindell was provided an opportunity to bring this property within allowable limits after he arrived at WCI.  All of the publications transferred to WCI with Lindell (or shortly after his arrival).  It seems, therefore, that the publications were permissible at his prior institution.

16

In inmate complaint WCI-2013-9421, Moon stated that Lindell's "ability to control his property, what titles he has, was forfeited when he exceeded the reasonable limit prescribed by DAI Policy and Procedure 309.20.03." While DAI Policy 309.20.03(I)(F) policy provides incentive to WCI inmates who knowingly exceed WCI's limits on publications, Lindell could not forfeit his ability to control his property regarding a property limit he did not know about and that apparently did not apply at his prior institution. There appears to be a disconnect between the policy at issue and Lindell's situation, which leads to the court to question whether defendants' application of the policy to Lindell was reasonable. *See Lindell v. Frank*, 377 F.3d 655, 659 (7th Cir. 2004).

B.      Hobby Projects

Turning to Lindell's hobby projects, upon transfer to WCI, all of his completed hobby projects were deemed contraband. There are three institution policies involved with this claim. The first provides that all completed hobby projects must be disposed of within 30 days of completion. The second states that hobby projects and materials may not be returned to the institution, including photographs of projects. The third provides that hobby staff should use their discretion to determine when a project is complete.

Lindell contends that defendants' generalized concerns that they destroyed his artwork to preserve the management, security, and resources carry no weight. He charges that defendants made no effort to clarify how some sheets of paper with his art on them posed a threat to their generalized concerns that is not posed by the other thousands of pieces of paper that he was allowed to possess. Next, under the second *Turner* factor, Lindell contends that there were no alternative means available to share his art because defendants refused to inform him what pieces of art they had taken, they refused to allow him to mail the

17

art to his attorney, and some of the art was not finished. Lindell states that the regulations also fail to satisfy the third *Turner* factor because it would not have burdened anyone to have allowed him to keep his drawings or to mail them to his attorney, and because the defendants expended resources looking for drawings rather than simply leaving them be. Lastly, Lindell submits that last factor weighs heavily against defendants because paper with drawings on it is no more of a safety hazard than paper with "other stuff" on it as both may inflict paper cuts or fuel a fire. According to Lindell, paper with art is more beautiful, and possibly more soothing, than other paper.

Here, defendants' policies reasonably relate to legitimate penological needs. First, institution security is a valid concern. In addition to limiting an inmate's property, defendants do not permit completed artwork because it could create a conflict among inmates based on its perceived value within the institution or how it demonstrates inmates' thoughts and beliefs. This justification alone may be sufficient reason for the policy. *See Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009) ("Where . . . there is only minimal evidence suggesting that the prison's regulation is irrational, running through each factor at length is unnecessary.")). Second, while inmates may create artwork, they may not keep completed artwork; the alternative to exercising the right is creating no more artwork than is permitted under prison regulations. In addition, inmates may ship completed artwork out of the institution. Third, accommodating the right by allowing inmates to keep their completed artwork has the potential to cause conflict among inmates and create security issues within the institution. Fourth, there is not a ready alternative to the prison regulations regarding hobby projects, specifically with regard to the designation of hobby staff to decide when artwork is complete.

While the hobby regulations at issue are valid restrictions on WCI prisoners' First Amendment rights, it is not crystal clear how they were applied to Lindell. First, Lindell was not permitted to send his completed hobby projects to his attorney because his attorney was not on his visiting list. Moreover, it does not appear that DOC regulations require certain institution visitors, including attorneys, to be on inmates' visiting lists. *See* Wis. Admin. Code § DOC 309.10(12). In addition, contrary to defendants' assertions, institution policy provides that competed hobby projects may be sent out of WCI on a visit. (Defs.' Ex. 1015 at 013.) Although, as stated above, the hobby policies are reasonably related to legitimate penological interests, their application to Lindell's situation may not have been reasonable in this instance. Specifically, there is a factual issue as to the reasonableness of the decision to not allow Lindell to mail his artwork to his attorney, or to allow a visitor to take it.

C.     Qualified Immunity

Defendants contend that they are entitled to qualified immunity because it was not clearly established, based on the facts confronting them, that their conduct would violate the First Amendment. In particular, defendants highlight that they relied on state regulations and official policy that explicitly sanctioned the conduct in question, and that their actions were in accordance with DOC policy and the Wisconsin Administrative Code. Lindell counters that the constitutional right of prisoners to possess publications and artwork is well-established and that defendants are not entitled to qualified immunity.

"Public officials are immune from suit under 42 U.S.C. § 1983 unless they have violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *City and Cnty. of San Francisco v. Sheehan*, ___ U.S. ___, ___, 135 S. Ct. 1765, 1768 (2015). Qualified immunity protects government officials "from liability for

19

civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining whether a state official is entitled to qualified immunity involves two inquiries: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Williams v. City of Chicago*, 733 F.3d 749, 758 (7th Cir. 2013) (citation omitted). If either inquiry can be answered in the negative, the official is entitled to summary judgment. Courts may address the two prongs of qualified immunity in either order. *Pearson*, 555 U.S. at 236. A right is clearly established if "a reasonable official would have understood what he is doing violates that right." *Reichle v. Howards*, ___ U.S. ___, ___, 132 S. Ct. 2088, 2093 (2012) (internal quotations and brackets omitted). To prove that the official violated a clearly established right, a plaintiff must use Supreme Court precedent, circuit case law, or a consensus of out-of-circuit case decisions. *See Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011); *Denius v. Dunlap*, 209 F.3d 944, 951 (7th Cir. 2000); *Hearring v. Sliwowski*, 712 F.3d 275, 282 (6th Cir. 2013); *Suboh v. Dist. Attorney's Office of Suffolk Dist.*, 298 F.3d 81, 93 (1st Cir. 2002).

In support of his contention that the First Amendment rights at issue are well-established, Lindell first contends that it is clearly established that he has a free speech based right to have publications, citing *Bell v. Wolfish*, 441 U.S. 520 (1979), *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996) (arbitrary denial of reading materials at Cook County Jail states First Amendment claim), and *King v. Federal Bureau of Prisons*, 415 F.3d 634, 638-39 (7th Cir. 2005) (federal prisoner stated First Amendment free speech claim based on

allegations that prison prevented him from obtaining book of computer programming) . In addition, Lindell contends that it is "well-known that art/images are also protected by the Free Speech Clause, even in prisons," citing *Lindell v. Frank*, 377 F.3d at 558-59 (inmate's allegations that prison officials arbitrarily confiscated picture postcards from his cell stated First Amendment claim).

Lindell's citations to these cases do not show that it was clearly established that not allowing Lindell to review his contraband publications before they were destroyed would violate his First Amendment rights. With regard to Lindell's hobby projects claims, the court must determine whether it was clearly established that not permitting him to mail, or send out with a visitor, his contraband hobby projects violated the First Amendment. Many cases show that inmates retain First Amendment rights while incarcerated. However, such a broad right does not mean that Lindell had the specific right to review his contraband publications or to mail out his contraband hobby projects after 30 days. *See Reichle*, 132 S. Ct. at 2094 n.5 (noting that a litigant may not use "high levels of generality to state that a specific right is clearly established); *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987). Lindell has not shown that defendants violated a clearly established right. Accordingly, defendants are entitled to qualified immunity on Lindell's First Amendment claims.

D.    Injunctive Relief

Lindell is no longer at WCI - he is now a federal prisoner. He contends that he could be returned to WCI "at any time." However, the record does not support a finding that there is a realistic possibility that Lindell will be returned to a Wisconsin Department of Corrections institution, let alone WCI. Therefore, Lindell's requests for injunctive and declaratory relief

are now moot.  *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011); *Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir. 2009).

## IV. ADDITIONAL MATTERS

Lindell has filed two motions for sanctions (Doc. 77, 78) and a motion to strike defendants' additional arguments and evidence (Doc. 79).  In one motion for sanctions, Lindell disputes arguments made in defendants' summary judgment brief and asserts that defendants should have included additional exhibits with their materials.  The other motion for sanctions disputes arguments made in defendants' summary judgment brief.  He contends that defendants' submissions violate Federal Rule of Civil Procedure 11(b) and he seeks relief under Federal Rule of Civil Procedure 11(c).  However, Lindell did not serve his motions on defendants before filing it with the court.  Therefore, the court will not consider the motions. *See Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147, 151 (7th Cir. 1996) (motion for sanctions filed without meeting Rule 11 notice requirements is effectively not a motion).

In his motion to strike, Lindell contends that the court should strike portions of defendants' reply.  According to Lindell, the arguments and evidence in defendants' reply are waived because defendants did not include them in their brief-in-chief.  However, defendants' submissions were made in reply to Lindell's proposed findings of fact and, as such, were permitted.  *See Cars R Us Sales and Rentals, Inc. v. Ford Motor Co.*, 2011 WL 1225468, at *1 (N.D. Ill. 2011); *see also Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011) ("[w]hile arguments made for the first time in a reply brief are generally treated as waived, it does not necessarily follow that arguments that are better developed in a reply brief are waived.").  Lindell also challenges Core's Declaration because he was not disclosed as

22

an expert under Fed. R. Civ. P. 26(a)(2). However, because a trial date has not been set, declaration is not untimely. Therefore,

IT IS ORDERED that defendants' motion for summary judgment (Doc. 41) is GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for sanctions (Doc. 77) is DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for sanctions (Doc. 78) is DENIED.

IT IS FURTHER ORDERED that plaintiff's motion to strike (Doc. 79) is DENIED.

Dated at Milwaukee, Wisconsin, this 31st day of August, 2015.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. District Judge